**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

RICHARD DEEDS, Plaintiff,

vs.

ROBERT BARATS, *et al.*, Defendants.

3:03-CV-0453-LRH (VPC)

**REPORT AND RECOMMENDATION OF U.S. MAGISTRATE JUDGE**

March 10, 2008

This Report and Recommendation is made to the Honorable Larry R. Hicks, United States District Judge. The action was referred to the undersigned Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1)(B) and LR IB 1-4. Before the court is defendants' motion for summary judgment as to plaintiff's monetary claims (#339). Plaintiff opposed (#367) and defendants replied (#392). Also before the court is plaintiff's motion for summary judgment against defendants Crawford and Kelly (#363). Defendants opposed (#391) and plaintiff replied (#396). The court has thoroughly reviewed the record and the motions and recommends that defendants' motion for summary judgment as to plaintiff's monetary claims (#339) be granted, and plaintiff's motion for summary judgment against defendants Crawford and Kelly (#363) be denied.

## I. HISTORY & PROCEDURAL BACKGROUND

Plaintiff Richard T. Deeds ("plaintiff"), a *pro se* prisoner, is currently incarcerated in the custody of the Nevada Department of Corrections ("NDOC") at the Northern Nevada Correctional Center ("NNCC") (#250). Plaintiff brings his second amended complaint pursuant to 42 U.S.C. § 1983, alleging violations of his First, Fifth, Eighth, and Fourteenth Amendment rights, and his rights pursuant to the Americans with Disabilities Act ("ADA"). *Id.* Plaintiff names as defendants Robert Bayer, former NDOC Director;[1] Jackie Crawford, former NDOC Director; Theodore D'Amico, NDOC Medical Director; Andrew Fras, NNCC Physician; Donald

[1] The court dismissed defendant Bayer on April 26, 2007 (#198, #240, #258 and #259).

Helling, NNCC Warden; Chaplain Kelly, NNCC Chaplain; Keith Kennedy, NNCC Lieutenant; Janet Lamb, NNCC Nurse; and Donald Thorpe and Robert Barats, NNCC Correctional Officers. *Id*.

The parties' motions pertain only to counts one and two.[2] In count one, plaintiff alleges that defendant Crawford violated his Fifth Amendment "right to compensation" by denying him the proceeds of the "many thousands of dollars" which earn interest in his inmate account. *Id*. In count two, plaintiff alleges that defendant Kelly violated his First Amendment right to marry and his Fourteenth Amendment right "not to be extorted by a prison chaplain" by requiring plaintiff to pay a $134.00 fee to hire supervisory staff as a condition of permitting plaintiff to get married. *Id*.

The Court notes that the plaintiff is proceeding *pro se*. "In civil rights cases where the plaintiff appears *pro se*, the court must construe the pleadings liberally and must afford plaintiff the benefit of any doubt." *Karim-Panahi v. Los Angeles Police Dep't*, 839 F.2d 621, 623 (9th Cir. 1988); *see also Haines v. Kerner*, 404 U.S. 519, 520-21 (1972).

## II. DISCUSSION & ANALYSIS

### A. Discussion

#### 1. Summary Judgment Standard

Summary judgment allows courts to avoid unnecessary trials where no material factual disputes exist. *Northwest Motorcycle Ass'n v. U.S. Dept. of Agriculture*, 18 F.3d 1468, 1471 (9th Cir. 1994). The court grants summary judgment if no genuine issues of material fact remain in dispute and the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c). In deciding whether to grant summary judgment, the court must view all evidence and any inferences arising from the evidence in the light most favorable to the nonmoving party. *Bagdadi v. Nazar*, 84 F.3d 1194, 1197 (9th Cir. 1996). In inmate cases, the courts must

---

[2] In his second amended complaint, plaintiff did not set out formal "counts" (#250). Plaintiff sets out eleven claims in paragraph form. However, instead of numbering the paragraphs sequentially, plaintiff numbers his claims to correspond with numbers he assigned these claims in prior complaints. To avoid confusion, the court will refer to plaintiff's claims in sequence, as counts one through eleven, beginning with plaintiff's first paragraph.

> [d]istinguish between evidence of disputed facts and disputed matters of professional judgment. In respect to the latter, our inferences must accord deference to the views of prison authorities. Unless a prisoner can point to sufficient evidence regarding such issues of judgment to allow him to prevail on the merits, he cannot prevail at the summary judgment stage.

*Beard v. Banks*, 126 S.Ct. 2572, 2576 (2006). Where reasonable minds could differ on the material facts at issue, summary judgment should not be granted. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251 (1986).

The moving party bears the burden of informing the court of the basis for its motion, and submitting evidence which demonstrates the absence of any genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once the moving party has met its burden, the party opposing the motion may not rest upon mere allegations or denials in the pleadings but must set forth specific facts showing that there exists a genuine issue for trial. *Anderson*, 477 U.S. at 248. Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. *Celotex*, 477 U.S. at 322-23.

**B. Analysis**

As both parties filed motions for summary judgment, the court considers their evidence and arguments together.

**1. Count One**

Plaintiff alleges that defendant Crawford violated his Fifth Amendment rights by denying him the proceeds generated by money in his inmate account (#250). Defendant Crawford argues that she is entitled to qualified immunity because at the time that plaintiff brought his claim, the law was unsettled (#339).[3]

When a constitutional violation occurs, law enforcement officers nonetheless are entitled

---

[3] Defendant Crawford also argues that plaintiff failed to exhaust his administrative remedies. Because the court resolves this issue on qualified immunity grounds, it does not address the defendant's exhaustion argument.

to qualified immunity if they act reasonably under the circumstances. *KRL v. Estate of Moore*, 512 F.3d 1184, 1186 (9th Cir. 2008) (citing *Wilson v. Layne*, 526 U.S. 603, 614 (1999)). A qualified immunity analysis begins with a threshold question of whether, based upon facts taken in the light most favorable to the party asserting the injury, an official's conduct violated a constitutional right. *Saucier v. Katz*, 533 U.S. 194, 201 (2001). If no constitutional right was violated, the court need not inquire further. *Id*.

However, if a constitutional violation occurred, the court's second inquiry is to ask whether the law was "clearly established." *Id*. This is a question of law for the court. *Sinaloa Lake Owners Ass'n v. City of Simi Valley*, 70 F.3d 1095, 1099 (9th Cir. 1995). This inquiry must be undertaken within the context of each particular case, and not as a broad general proposition. *Id*. There need not be specific precedent directly on point to demonstrate whether a right is clearly established, *see Blueford v. Prunty*, 108 F.3d 251, 255 (9th Cir. 1997); however, the Supreme Court has stated that:

> The contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right. The relevant, dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted.

*Saucier*, 533 U.S. at 202. In the absence of binding precedent, the court should review all available decisional law, *see Ostlund v. Bobb*, 825 F.2d 1371, 1374 (9th Cir. 1987), and must consider the state of the law at the time of the alleged violation. *Inouye v. Kemna*, 504 F.3d 705, 712 (9th Cir. 2007). If the law did not put the defendant on notice that the conduct at issue would be "clearly unlawful," summary judgment based on qualified immunity is appropriate. *Id*.

If the court determines that the law was, indeed, clearly established at the time of the alleged violation, the final inquiry is whether the official could nevertheless have reasonably, but mistakenly, believed that his or her conduct did not violate the plaintiff's constitutional rights. *Sloman v. Tadlock*, 21 F.3d 1462, 1467 (9th Cir. 1994). The court must examine the "'information possessed' by the [state official] to determine whether a reasonable official in a particular factual situation should have been on notice that his or her conduct was illegal."

*Inouye*, 504 F.3d at 712 (citing *Anderson v. Creighton*, 483 U.S. 635, 641 (1987)). The reasonableness determination is also a question of law, unless there are issues of fact as to what the official knew and when. *Sinaloa Lake*, 70 F.3d at 1099. Qualified immunity protects "all but the plainly incompetent or those who knowingly violate the law." *Malley v. Briggs*, 475 U.S. 335, 341 (1986).

There are no issues of material fact here. Defendant Crawford admits that pursuant to a Nevada statute, she withheld the interest from inmates' personal prison accounts and put it in a general fund to benefit all inmates (#339). She also admits that the Ninth Circuit found this practice unconstitutional in 2003. *Id*. However, defendant Crawford argues that because the Ninth Circuit did not issue its holding until 2003, the law was not clearly established prior to that such that she would have reasonably known that she was violating plaintiff's constitutional rights. *Id*. Plaintiff disputes this, arguing that the Ninth Circuit established in 1993 in *Tellis v. Godinez*, 5 F.3d 1314 (9th Cir. 1993), or at the very least in 1998 in *Schneider v. California Dept. of Corrections*, 151 F.3d 1194 (9th Cir. 1998), that withholding interest from inmate accounts amounts to a constitutional violation (#367).

In *Tellis*, an inmate challenged NDOC's policy of taking the interest generated by inmates' personal accounts and using it for prisoner recreation and law library expenses. *Tellis*, 5 F.3d at 1315 and n.3. NDOC argued that the statute at issue, NRS 209.241, granted the Director of Prisons the discretion as to how to use the interest earned on prisoners' personal accounts. *Id*. At that time, NRS 209.241 stated that all interest and income earned on the money in a prisoners' personal property fund "*must be credited to the fund*." *Id*. at 1316 (emphasis in original). Based on that plain and mandatory language, the Ninth Circuit rejected NDOC's contention that the Director had discretion to use the interest as he saw fit, and held that prisoners had a protected property interest in the interest and income earned on their accounts. *Id*. at 1316-17. The court made clear that its holding was based on the language of the statute and supported by the fact that other sections of the Nevada Revised Statutes, unlike NRS 209.241, expressly authorized prison officials, under certain circumstances, to expend the interest earned in prisoners' accounts on things benefitting all prisoners. *Id*.

In response, the 1995 Nevada Legislature revised NRS 209.241 to state that all interest and income generated by prisoners' personal accounts "must be credited to the Offenders' Store Fund."[4] *McIntyre v. Bayer*, 339 F.3d 1097, 1099 (9th Cir. 2003); *see also* NRS 209.241 (1995). Further, the Nevada Legislature inserted the following language: "The provisions of this chapter do not create a right on behalf of any offender to any interest or income that accrues on the money in the Prisoners' Personal Property Fund." *Id*.

In 1997, another prisoner sued the NDOC claiming that the Director committed an unconstitutional "taking" by not returning to inmates the interest earned on the funds in their inmate accounts. *Id*. at 1097. The District Court, noting the *Tellis* holding and the subsequent revisions to NRS 209.241, held that the revised statute was constitutional. *Id*. at 1099.

Meanwhile, California prisoners sued the California Department of Corrections ("CDC"), alleging an unconstitutional taking under a similar California statute. *Schneider v. California Dept. of Corrections*, 151 F.3d 1194 (9th Cir. 1998). The California statute specified that interest earned in an Inmate Trust Account had to be allocated to the "Inmate Welfare fund." *Id*. at 1195-96. The Ninth Circuit distinguished *Tellis* based on the fact that the Nevada statute at issue in *Tellis* had contained language which required interest to be credited to the *inmate*. *Id*. The court stated that the specific holding in *Tellis* – that prisoners had a protected property interest in the interest generated by their prison accounts – was based solely on that language. *Id*. at 1198-99. The California statute did not contain that language. *Id*. However, the court went on to hold that there need not be an explicit statutory provision in order to find a protected property interest – traditional property law principles supported a finding that "interest income of the sort at issue here is sufficiently fundamental that States may not appropriate it without implicating the Takings Clause." *Id*. at 1199-1201.

Thereafter, the Ninth Circuit in *McIntyre* vacated the District Court holding that NRS 209.241 was constitutional, and remanded for reconsideration in light of *Schneider*, and another case, *Phillips v. Washington Legal Foundation*, 524 U.S. 156 (1998). *See McIntyre*, 339 F.3d at

---

[4] The monies in the Offenders' Store Fund are used for the benefit of all prisoners.

1099 (citing *McIntyre v. Bayer*, 182 F.3d 926, 1999 WL 274648 (9th Cir. 1999) (unpublished disposition)). On remand, and after supplemental briefing, the District Court held that NRS 209.241 did not effect an unconstitutional taking. *Id*. The Ninth Circuit overturned. *Id*. The court stated that it was not bound by Nevada's "bald assertion" that NRS 209.241 did not create a protected property interest because a state cannot "opt out" of the Due Process or Takings Clauses. *Id*. at 1100, n.5. Noting its decision in *Schneider*, the court held that the revised 1995 NRS 209.241 effected an unlawful taking in violation of the Fifth Amendment. *Id*. This was because the state appropriated the interest from prisoners' personal accounts and spent it "for the benefit of the prisoner population as a whole – that is, for public use." *Id*. at 1100. After *McIntyre*, NDOC deposited interest in all inmate accounts retroactive to January 1, 2002 (#339).[5]

First, it is clear that the Nevada Legislature *mandated* in 1995 that the NDOC director take interest from prisoners' personal property accounts and deposit it in the Offenders' Store Fund. NRS 209.241 (1995). The Director had no discretion in the matter as the statute stated that the Director "must" do so. As a member of the Executive branch of government, the Director must obey and carry out Nevada law.

Second, while it is true that in 1998, *Schneider* set out a general rule that keeping inmates' interest was an unconstitutional taking, at that same time, NDOC was litigating the constitutionality of NRS 209.241. For whatever reason, the Ninth Circuit in its 1998 *McIntyre* opinion did not hold that NRS 209.241 effected an unconstitutional taking. Instead, the Ninth Circuit remanded the case to the District Court for further consideration, stating that the District Court's reasoning "had been called into question, if not completely foreclosed" by *Schneider*. *See McIntyre v. Bayer*, 182 F.3d 926, 1999 WL 274648 (9th Cir. 1999) (unpublished disposition). On remand and after further briefing, the District Court held that NRS 209.241 did *not* effect an

[5] In accordance with *McIntyre*, the 2007 Nevada Legislature removed the phrase stating that the statute did not create a protected property interest for prisoners. NRS 209.241 (2007). The 2007 version also requires that all interest and income be credited to each prisoners' personal account, minus the prisoner's share of the costs of administering the Prisoners Personal Property Fund. NRS 209.241(4) (2007). If the administrative costs are greater than the interest a prisoner earns on his account, the interest is deposited into the Offenders' Store Fund. *Id*.

unconstitutional taking, which was, of course, overturned in 2003. *McIntyre v. Bayer*, 339 F.3d at 1099.

In light of the different interpretations of NRS 209.241 by the District Court of Nevada and the Ninth Circuit, it is clear that the state of law was in flux. NDOC was still defending this statute when the *Schneider* opinion issued. Shortly thereafter, the Nevada District Court held that NRS 209.241 was, in fact, constitutional, and it was not until 2003 that there was a definitive answer that it was unconstitutional. Additionally, NRS 209.241 and the California statute at issue in *Schneider* contained a different scheme and different language.

The court concludes that the law at issue here was not "clearly established" until 2003. Government officials are "not charged with predicting the future course of constitutional law." *Ostlund v. Bobb*, 825 F.2d 1371, 1374 (9th Cir. 1987). It was reasonable that defendant Crawford, whose actions were supported by the Nevada Legislature and the District Court of Nevada, did not think she was violating plaintiff's constitutional rights. Defendant Crawford is entitled to qualified immunity for her actions prior to 2003. Defendant Crawford's motion for summary judgment as to count one is granted.

**2. Count Two**

In count two, plaintiff alleges that defendant Kelly violated his First Amendment right to marry and his Fourteenth Amendment "right not to be extorted by a prison chaplain" by requiring a $134.00 fee to hire extra security as a condition of permitting plaintiff to marry his wife in May 2001 (#250). Defendant Kelly makes several factual and legal arguments (#s 339 and 391); however, the court need not address these as the court resolves this claim on the issue of standing.[6]

Plaintiffs who seek the jurisdiction of the federal courts must satisfy the threshold

---

[6] Plaintiff makes allegations in his motions and opposition which he fails to make in his complaint. Plaintiff claims that the $134.00 fee Ms. Sweeney paid was for "five (5) hours of visiting right after we married" (#367; *see also* #363 ("Still, [defendant Kelly] could have ordered we be allowed to talk under c/o Womer's supervision for 10 or 20 minutes, at least. That's part of a wedding.")). He also alleges that Warden Meligan did not deny plaintiff and Ms. Sweeney visitation rights after the ceremony, as defendant Kelly claims. *Id.*; *see also* #363. Aside from the fact that the court concludes below that plaintiff lacks standing, because plaintiff failed to make these allegations in his complaint, the court disregards them.

requirement of alleging an actual case or controversy pursuant to Article III of the United States Constitution. *City of Los Angeles v. Lyons*, 461 U.S. 95, 101 (1983). To satisfy Article III's standing requirements, a plaintiff must demonstrate that: (1) he has suffered an "injury in fact," which is "concrete and particularized," "actual or imminent," and not "conjectural or hypothetical;" (2) the injury is fairly traceable to the challenged action of the defendant; and (3) it is "likely" that the injury can be redressed by a favorable decision. *Serrato v. Clark*, 486 F.3d 560, 566 (9th Cir. 2007). The main question to be resolved through a standing analysis is "whether ... the plaintiff has shown an injury to himself that is likely to be redressed by a favorable decision." *Idaho Conservation League v. Mumma*, 956 F.2d 1508, 1513 (9th Cir. 1992). The plaintiff must have a "personal stake in the outcome of the controversy" to warrant his invocation of federal jurisdiction. *Simon v. Eastern Kentucky Welfare Rights Org.*, 426 U.S. 26, 38 (1976); *see also Boating industry Associations v. Marshall*, 601 F.2d 1376, 1381 (9th Cir. 1979) ("A plaintiff must always have suffered a distinct and palpable injury to himself ... .") (internal quotations and citations omitted).

Defendant Kelly submits a declaration stating that pursuant to Administrative Regulation 815, it was his responsibility as prison chaplain to make arrangements to facilitate approved inmate wedding ceremonies (#339, Exhibit E, ¶ 2). Defendant Kelly states that prior to their marriage, he informed the plaintiff and Ms. Sweeney that the rules required that he secure two correctional officers for the ceremony and that the plaintiff and Ms. Sweeney would be responsible for that cost. *Id*. at ¶¶ 3-4, 9. Plaintiff and Ms. Sweeney agreed to pay the costs. *Id*. at ¶¶ 9-10. Defendant Kelly further states that Ms. Sweeney submitted two money orders prior to the ceremony. *Id*. at ¶ 13. One money order was in the amount of thirty-five dollars ($35.00) to pay for the marriage certificate and the wedding official. *Id*. The other was in the amount of one-hundred and thirty-four dollars ($134.00) to pay for extra security personnel. *Id*.

Defendant Kelly argues that because plaintiff did not pay the wedding costs, plaintiff has suffered no injury, and therefore, has no standing (#339). Plaintiff admits that Ms. Sweeney paid the costs associated with the wedding ceremony "immediately prior to the time of our marriage upon May 9, 2001" (#363, Exhibit A-1, ¶ 8). However, plaintiff argues that because he is married

to Ms. Sweeney, state law provides him with standing to adjudicate her rights (#367). Plaintiff also claims to have a one-half interest in what she purchased. *Id.*

Plaintiff cites a number of Nevada statutes setting out spousal community property rights, arguing that they give plaintiff an interest in the money Ms. Sweeney submitted prior to their marriage (#367, p. 11 (citing NRS 123.225, NRS 10.045,and NRS 123.030)). These statutes apply *after* marriage; thus, any funds in possession of either party *prior* to marriage is not community property. In *U.S. v. Real Property Located at Incline Village*, 976 F.Supp. 1327, 1341 (D. Nev. 1997), the court, citing NRS 123.225, stated, "In community property states, property owned by either spouse before marriage ... remains the separate property of that spouse. ... ." NRS 123.030 states "A husband and wife may hold real or personal property as joint tenants, tenants in common, or as community property." At the time that Ms. Sweeney paid the wedding costs with her separate property, it is undisputed that plaintiff and Ms. Sweeney were not "husband and wife." Thus, plaintiff has no interest in the funds Ms. Sweeney used to pay the wedding costs.

Plaintiff also cites NRS 12.010, which states that a "husband and wife may sue jointly on all causes of action belonging to either or both of them." First, plaintiff and Ms. Sweeney are not suing "jointly." Plaintiff is attempting to sue on behalf of Ms. Sweeney for Ms. Sweeney's separate injury. This is not what the statute contemplates. Second, merely marrying Ms. Sweeney does not transform all her past injuries into plaintiff's injuries.

The court notes that in conjunction with count one, plaintiff has represented to the court that he had "thousands" of dollars in his prison account during 2000 and 2001 (#367, p.6 ("My average weekly account balance for fiscal years 2000-2001, inclusive, was no less than $5,600.00."). Therefore, this is not a case in which plaintiff was indigent and could not pay the fees himself. Plaintiff and Ms. Sweeney made a decision to have Ms. Sweeney pay the wedding costs. Sandra Sweeney is not a party to this lawsuit (#250). Plaintiff cannot identify an injury to himself – he was permitted to marry Ms. Sweeney, and he paid nothing to do so. Any loss of funds is Ms. Sweeney's injury. As plaintiff has no standing, the court grants defendant Kelly's

motion for summary judgment as to count two.[7]

## III. CONCLUSION

Based on the foregoing and for good cause appearing, the court concludes that defendant Crawford is entitled to qualified immunity because the law regarding whether failing to credit inmate accounts with the interest they generate was not "clearly established" until 2003; thus, a reasonable person would not have known that she was violating plaintiff's constitutional rights. The court further concludes that plaintiff lacks standing to bring count two because he did not pay the costs associated with his 2001 wedding ceremony, and therefore, incurred no injury.

As such, the court recommends that defendants' motion for summary judgment as to plaintiff's monetary claims (#339) be **GRANTED**. The court further recommends that plaintiff's motion for summary judgment against defendants Crawford and Kelly (#363) be **DENIED**.

The parties are advised:

1. Pursuant to 28 U.S.C. § 636(b)(1)(c) and Rule IB 3-2 of the Local Rules of Practice, the parties may file specific written objections to this report and recommendation within ten days of receipt. These objections should be entitled "Objections to Magistrate Judge's Report and Recommendation" and should be accompanied by points and authorities for consideration by the District Court.

2. This report and recommendation is not an appealable order and any notice of appeal pursuant to Fed. R. App. P. 4(a)(1) should not be filed until entry of the District Court's judgment.

///

---

[7] While the court disposes of this claim on procedural grounds, it notes that plaintiff argues they were not actually provided with as much security as they allegedly paid for (#367). Moreover, plaintiff claims that they paid $134.00 for only twenty-one minutes of security. *Id.* Defendant Kelly states that he was required to hire two correctional officers to supervise every wedding, that he secured Officers Womer and Dennis to supervise plaintiff's wedding ceremony, and that Ms. Sweeney remitted $134.00 "for the expense of the two correctional officers" (#339, Exhibit E, ¶¶ 4, 12-13). However, plaintiff presents evidence that only officer Womer was present to supervise the ceremony, and that the ceremony lasted for approximately twenty minutes (#363, Exhibit D). This does lend some credence to plaintiff's complaint that prior to being allowed to marry, inmates are overcharged and do not receive what they paid for. However, the court's conclusion that this injury is to Ms. Sweeney, and not plaintiff, stands.

## IV. RECOMMENDATION

**IT IS THEREFORE RECOMMENDED** that defendants' motion for summary judgment as to plaintiff's monetary claims (#339) be **GRANTED**. The court further recommends that plaintiff's motion for summary judgment against defendants Crawford and Kelly (#363) be **DENIED**.

**DATED:** March 10, 2008.

Valerie P. Cooke

**UNITED STATES MAGISTRATE JUDGE**