1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# UNITED STATES DISTRICT COURT

## DISTRICT OF NEVADA

RICHARD DEEDS          )
                       )          3:03-CV-0453-LRH (VPC)
        Plaintiff,     )
                       )
    vs.                )          **REPORT AND RECOMMENDATION**
                       )          **OF U.S. MAGISTRATE JUDGE**
ROBERT BARATS, *et al*.,    )
                       )
        Defendants.    )          May 16, 2008
_____)

    This Report and Recommendation is made to the Honorable Larry R. Hicks, United States District Judge.  The action was referred to the undersigned Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1)(B) and LR IB 1-4.  Before the court is defendants' motion for summary judgment re: disciplinary claims (#355 and #361 (*in camera*)).  Plaintiff opposed as to defendants Thorpe and Kennedy (#378) and defendants replied (#390).[1]  Also before the court is plaintiff's motion for summary judgment against defendant Kennedy (#327).  Defendants opposed (#365) and plaintiff replied (#396).  Also before the court is plaintiff's motion for summary judgment against defendant Thorpe (#346), which defendants opposed (#375).[2]  The court has thoroughly reviewed the record and the motions and recommends that defendants' motion for summary judgment re: disciplinary claims as to defendants Kennedy and Thorpe (#355) be granted in part and denied in part, and plaintiff's motions for summary judgment against defendant Kennedy (#327) and defendant Thorpe (#346) be denied.

///

---

    [1] Defendants' motion for summary judgment re: disciplinary claims involves plaintiff's claims against defendants Kennedy, Thorpe and Lamb (#355). Plaintiff filed two oppositions – one as to defendants Kennedy and Thorpe (#378), and one as defendant Lamb (#373).  The court addressed plaintiff's claims against defendant Lamb in a separate report and recommendation (#414).

    [2] Plaintiff's motion for summary judgment against defendant Thorpe also included a motion for summary judgment against defendant D'Amico, which the court addressed in a separate report and recommendation (#404).

1

# I.  HISTORY & PROCEDURAL BACKGROUND

2      Plaintiff Richard T. Deeds ("plaintiff"), a *pro se* prisoner, is currently incarcerated in the

3 custody of the Nevada Department of Corrections ("NDOC") at the Northern Nevada

4 Correctional Center ("NNCC") (#250).  Plaintiff brings his second amended complaint pursuant

5 to 42 U.S.C. § 1983, alleging violations of his First, Fifth, Eighth, and Fourteenth Amendment

6 rights, and his rights pursuant to the Americans with Disabilities Act ("ADA").  *Id*.  Plaintiff

7 names as defendants Robert Bayer, former NDOC Director; Jackie Crawford, former NDOC

8 Director; Theodore D'Amico, NDOC Medical Director; Andrew Fras, NNCC Physician; Donald

9 Helling, NNCC Warden; Chaplain Kelly, NNCC Chaplain; Keith Kennedy, NNCC Lieutenant;

10 Janet Lamb, NNCC Correctional Nurse; Donald Thorpe, NNCC Correctional Officer; and Robert

11 Barats, NNCC Correctional Officer.  *Id*.

12      The parties' motions for summary judgment pertain to counts nine and ten (#250).[3]  In

13 count nine, plaintiff alleges that on January 15, 2002, defendant Kennedy "sentenced me to 45

14 days disciplinary detention, limited to 15 days by the U.S. Supreme Court, by calling it 'Austere

15 Housing,' violating the 8th Amendment prohibition of the sanction."  *Id*.  In count ten, plaintiff

16 alleges that on January 7, 2002, defendant Thorpe violated his Fourteenth Amendment rights by

17 issuing a false disciplinary charge against plaintiff to conceal the fact that he assaulted plaintiff.

18 *Id*.

19      The Court notes that the plaintiff is proceeding *pro se*.  "In civil rights cases where the

20 plaintiff appears *pro se*, the court must construe the pleadings liberally and must afford plaintiff

21 the benefit of any doubt."  *Karim-Panahi v. Los Angeles Police Dep't*, 839 F.2d 621, 623 (9th

22 Cir. 1988); *see also Haines v. Kerner*, 404 U.S. 519, 520-21 (1972).

23 ///

24 ///

25 _____

26      [3] In his second amended complaint, plaintiff did not set out formal "counts" (#250).  Plaintiff sets out eleven claims in paragraph form.  However, instead of numbering the paragraphs sequentially, plaintiff

27 numbers his claims to correspond with numbers he assigned these claims in prior complaints.  To avoid confusion, the court will refer to plaintiff's claims in sequence, as counts one through eleven, beginning with

28 plaintiff's first paragraph.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## II. DISCUSSION & ANALYSIS

### A. Discussion

#### 1. Summary Judgment Standard

Summary judgment allows courts to avoid unnecessary trials where no material factual disputes exist. *Northwest Motorcycle Ass'n v. U.S. Dept. of Agriculture*, 18 F.3d 1468, 1471 (9th Cir. 1994). The court grants summary judgment if no genuine issues of material fact remain in dispute and the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c). In deciding whether to grant summary judgment, the court must view all evidence and any inferences arising from the evidence in the light most favorable to the nonmoving party. *Bagdadi v. Nazar*, 84 F.3d 1194, 1197 (9th Cir. 1996). In inmate cases, the courts must

> [d]istinguish between evidence of disputed facts and disputed matters of professional judgment. In respect to the latter, our inferences must accord deference to the views of prison authorities. Unless a prisoner can point to sufficient evidence regarding such issues of judgment to allow him to prevail on the merits, he cannot prevail at the summary judgment stage.

*Beard v. Banks*, 126 S.Ct. 2572, 2576 (2006). Where reasonable minds could differ on the material facts at issue, summary judgment should not be granted. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251 (1986).

The moving party bears the burden of informing the court of the basis for its motion, and submitting evidence which demonstrates the absence of any genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once the moving party has met its burden, the party opposing the motion may not rest upon mere allegations or denials in the pleadings but must set forth specific facts showing that there exists a genuine issue for trial. *Anderson*, 477 U.S. at 248. Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. *Celotex*, 477 U.S. at 322-23.

///

///

3

1      **B.  Analysis**

2          As the parties filed cross-motions for summary judgment, the court addresses all

3  arguments and evidence  concurrently.

4          **1. Plaintiff's Claims**

5          Initially, the court must define the limits of the claims in plaintiff's complaint.  Plaintiff

6  alleged certain constitutional claims against defendants Thorpe and Kennedy in his complaint,

7  but in his motions and oppositions, makes arguments concerning additional constitutional claims.

8  The defendants contend that plaintiff's arguments should be limited to the claims in his

9  complaint.

10          **a. Defendant Thorpe**

11          In his complaint, plaintiff alleges that defendant Thorpe violated his Fourteenth

12  Amendment "right to fairness" by issuing a false Notice of Charges ("NOC") on January 7, 2002,

13  to cover up the fact that he assaulted plaintiff (#250).  Defendants question whether the "right to

14  fairness" is a cognizable constitutional claim (#355 and #390).  Additionally, in his filings,

15  plaintiff makes a number of new allegations, asserting that defendant Thorpe "hunted" him for

16  six months, did not allow him to read, write or talk on the telephone, and sexually harassed him

17  and demanded sexual favors (#378, pp. 3-5, 19-20; #346).  Plaintiff also claims that he filed

18  "many" complaints about defendant Thorpe, which Thorpe knew about when he issued the false

19  NOC.  *Id.*  Further, plaintiff alleges that defendant Thorpe physically harmed him during the

20  January 7 incident   (#346, p. 25).[4]  In his filings, plaintiff cites to both First Amendment

21  retaliation law and Eighth Amendment excessive force law, seemingly arguing that the court

22  should grant him summary judgment on both (#346 and #378).  Despite that fact that the court

23  must view *pro se* litigants' complaints liberally, and even giving the plaintiff the benefit of the

24  doubt, nowhere in his complaint has he alleged either a retaliation or excessive force claim

25

26          [4] At the end of his motion for summary judgment, plaintiff even adds the new allegation that
27  defendant Thorpe tried to throw plaintiff down the metal stairs during the incident on January 7.  *See* #346,
  p. 27 ("He actually tried to throw me down those metal stairs.  I figure I'll save that part for damages"); *see*
28  *also* #378, pp. 11, -14.  This allegation is entirely unsupported by any evidence.

1    against defendant Thorpe.  *See* #250.  Thus, the court disregards all allegations and evidence

2    plaintiff submits in an attempt to prove either of these constitutional violations.  Considering

3    plaintiff's *pro se* status, the court construes plaintiff's claim against defendant Thorpe as an

4    allegation that defendant Thorpe violated plaintiff's Fourteenth Amendment due process rights

5    by issuing a false NOC.

6                              **b. Defendant Kennedy**

7            In his amended complaint, plaintiff alleges that defendant Kennedy violated his Eighth

8    Amendment rights by sentencing him to forty-five days in disciplinary detention, but calling it

9    "austere housing" to get around limits on the amount of time prison officials may confine an

10   inmate to disciplinary detention (#250).  Plaintiff does not mention the Fourteenth Amendment

11   in his amended complaint, but makes a number of Fourteenth Amendment arguments in his

12   motions.  Defendants contend that plaintiff has failed to state a Fourteenth Amendment claim

13   (#355 and #365).  Plaintiff claims that defendants have admitted that he stated a Fourteenth

14   Amendment claim against defendant Kennedy and should be estopped from arguing otherwise

15   (#378).

16          The court held a hearing on September 25, 2006 (#144).  Plaintiff's complaint in effect

17   at that time alleged both Fourteenth and Eighth Amendment violations against defendant

18   Kennedy.  *See* #3, p. 11, ¶¶ 17 and 19.  During that hearing, defense counsel acknowledged that

19   plaintiff had properly alleged a Fourteenth Amendment claim against defendant Kennedy (#144).

20   Later in these proceedings, the court granted plaintiff leave to amend his complaint, although it

21   issued strict instructions as to the amendments plaintiff was permitted to make (#243).  In his

22   amended complaint, plaintiff asserted only an Eighth Amendment claim against defendant

23   Kennedy (#250).

24          Defense counsel now asserts that her admission that plaintiff had stated a Fourteenth

25   Amendment claim against defendant Kennedy was in relation *only* to plaintiff's original

26   complaint and not plaintiff's amended complaint (#365).  The court agrees that plaintiff's

27   amended complaint alleges only an Eighth Amendment claim against defendant Kennedy and the

28   court construes that claim as challenging the conditions of confinement in austere housing (#250,

                                                5

p. 9).  However, because plaintiff possibly misinterpreted what was required of him in amending his complaint based on the September 25, 2006 hearing (#144) and the March 20, 2007 hearing (#243), and because the plaintiff is acting *in pro se*, the court will give him the benefit of the doubt and will address both Eighth and Fourteenth Amendment claims against defendant Kennedy.[5]  However, although this court will address a Fourteenth Amendment due process claim against defendant Kennedy with regard to the procedures plaintiff received during his disciplinary hearing, it will not allow plaintiff to expand on the claims set out in his complaint.[6]

### 2. Fourteenth Amendment Due Process Claims Against Defendants Thorpe and Kennedy

Plaintiff claims that defendant Thorpe violated his due process rights when he issued plaintiff a false NOC.  Plaintiff further claims that defendant Kennedy denied him due process during his disciplinary hearing because Kennedy had a conflict of interest, falsified plaintiff's statement, and denied plaintiff his right to call witnesses and present evidence.

Prisoners may not be deprived of liberty or property without due process of law.  *Wolff v. McDonnell*, 418 U.S. 539, 556 (1974).  In *Wolff*, the Supreme Court held that prisoners must receive minimum due process rights when a liberty or property interest is at stake during a

---

[5] This conclusion is appropriate because with relation to plaintiff's claim against defendant Thorpe, the court will be addressing defendant Kennedy's actions during the hearing anyway.  This is because plaintiff's Fourteenth Amendment claims against defendants Thorpe and Kennedy essentially overlap each other.  To resolve plaintiff's claim that defendant Thorpe issued a false NOC, the court must review whether plaintiff received due process with regard to the guilty finding; thus, the court must review defendant Kennedy's actions during the disciplinary hearing.

[6] Plaintiff makes many legal arguments in his filings that are irrelevant to the claims in his complaint.  For instance, in his motion for summary judgment against defendant Kennedy, plaintiff argues that NDOC created a liberty interest by promulgating Administrative Regulation ("AR") 733, which states that inmates in disciplinary segregation should be permitted to retain their personal property unless security requires otherwise (#327, pp. 5, 15).  In support of this assertion, plaintiff cites case law which holds that states create liberty interests by including mandatory language within state statutes and prison regulations (#327 citing *Walker v. Sumner*, 14 F.3d 1415 (9th Cir. 1994), *Kentucky Dept. of Corrections v. Thompson,* 490 U.S. 454 (1989), and *Hewitt v. Helms*, 459 U.S. 460 (1983)).  First, plaintiff should take note that this "mandatory language" methodology was overruled in 1995.  *Sandin v. Conner*, 515 U.S. 472, 484, n.5 (1995) (abandoning the approach set out in *Hewitt* and *Thompson*).  Inmates no longer receive liberty interests merely from the inclusion of mandatory terms such as "shall" and "must" in the language of a regulation or rule.  Second, a liberty interest claim is not within the realm of claims that plaintiff alleged in either his original or amended complaints.

1   disciplinary hearing.  *Id.* at 556.  However, "prison disciplinary proceedings are not part of a

2   criminal prosecution, and the full panoply of rights due a defendant in such proceeding does not

3   apply."  *Id*.  The rights a prisoner receives during a prison disciplinary hearing must consist of a

4   "mutual accommodation between institutional needs and objectives and the provisions of the

5   Constitution."  *Id*.  Thus, prisoners are entitled to advance written notice of the disciplinary

6   charges, an opportunity to call witnesses and present evidence if consistent with institutional

7   safety and correctional goals, and a written statement by the fact finder as to the evidence relied

8   upon and the reasons for the disciplinary action taken.  *Serrano v. Francis*, 345 F.3d 1071, 1078

9   (9th Cir. 2003) (citing *Wolff*, 418 U.S. at 564-71).  A disciplinary officer's decision need be

10  supported only by "some evidence in the record."  *Superintendent v. Hill*, 472 U.S. 445, 454

11  (1985).

12         Nevada law provides that a conviction of a crime, by itself, does not work a forfeiture of

13  real or personal property.  NRS 212.010(2).  Defendants agree that plaintiff has a property interest

14  in his personal property (#365, p. 11).  Thus, *Wolff* requires that plaintiff receive minimum due

15  process prior to being sentenced to forty-five days loss of his personal property and appliances.

16         The court has reviewed the parties' evidence.  The defendants' incident reports and NOC

17  state that on January 7, 2002, correctional officer-in-training Neighbors observed plaintiff

18  standing at the front of a cell for an extended period of time (#355, Exhibits F, G and H).[7]

19  Neighbors then observed a small bag containing a brown substance, later identified to be instant

20  coffee, passed under the door to plaintiff from the cell occupants.  Neighbors informed defendant

21  Thorpe.  Defendant Thorpe proceeded toward the cell from the unit office and ordered plaintiff

22  to step back and leave the bag on the floor.  Plaintiff failed to obey this order, instead, picking up

23  the bag and walking towards the stairs.  Defendant Thorpe stopped part way up the stairs,

24  stretched his arms to each side, and again told plaintiff to stop and surrender the bag.  Plaintiff

25

26         [7] Defendant Thorpe wrote one incident report and correctional officer-in-training Neighbors wrote
27  the other.  Plaintiff makes much out of the fact that Neighbors was an officer-in-training, claiming that
    Neighbors wrote his report a certain way in order to get a good recommendation from defendant Thorpe.
28  There is no evidence of this and the court disregards this allegation.

7

refused, and used his chest to push past defendant Thorpe's outstretched arm and proceed down the stairs. Defendant Thorpe ordered plaintiff to stop and surrender the bag approximately eight more times; however, plaintiff ignored the orders and began to get "loud and argumentative." The incident disrupted the unit to the extent that Neighbors instituted a lock-down of all inmates, retrieved a twelve-gauge shotgun, and placed himself in the window of the unit office. At this point, defendant Thorpe was able to place plaintiff in restraints by grabbing his arm and holding him against a table. However, even after defendant Thorpe moved plaintiff – who was in restraints by that time – to the unit office, plaintiff continued to disobey Thorpe's orders by refusing to sit down in a chair. Plaintiff was also verbally argumentative and abusive. Thereafter, plaintiff was taken to medical for examination.

On January 11, plaintiff was served with a copy of the NOC. *Id*., Exhibit F, D-MSJ 18. That same day, a preliminary hearing officer reviewed the NOC, and referred resolution of the incident to the disciplinary committee. *Id*., D-MSJ 20. Plaintiff did not make a statement to the preliminary hearing officer, but indicated that at the future disciplinary hearing, he wanted to call two witnesses – Officer Minegar and Associate Warden Coleman. *Id*.

Defendant Kennedy held the disciplinary hearing on January 15, 2002. *Id*., D-MSJ 21-22. Plaintiff attended the hearing and pled not guilty to all charges, one of which was a battery charge for walking through defendant Thorpe's outstretched arm on the stairs. The sole witness was Officer Neighbors, who testified that the incident did not rise to the level of a battery, but that he had feared for Thorpe's safety to the extent that he retrieved a shotgun. The hearing report contains plaintiff's statement, in which he admits that he possessed the bag of instant coffee. He also stated "I was offended that [Thorpe] touched me and I walked through his arm on the stairs." Defendant Kennedy found plaintiff guilty of three violations, although he downgraded the battery from a major to a general violation based on Neighbors' testimony. Defendant Kennedy sentenced plaintiff to forty-five days loss of personal property and appliances, and forty-five days confinement in disciplinary segregation in the austere housing unit. In making his determination, defendant Kennedy relied upon the NOC, plaintiff's statement, and Neighbors's testimony. There is no indication that plaintiff asked or was actually permitted to submit evidence or call witnesses.

1    The court first finds that defendants met *Wolff's* advance notice and written disposition

2    requirements.  The evidence reveals that plaintiff received advanced notice of the charges on

3    January 11, 2002 (#355, Exhibit F, D-MSJ 18-19).  As to the written disposition requirement,

4    defendant Kennedy wrote in the hearing report that he relied on plaintiff's statement, the NOC,

5    and Neighbors's testimony in finding plaintiff guilty.  *Id.* at D-MSJ 22.

6    However, genuine issues of material fact exist as to whether defendant Kennedy

7    impermissibly prohibited plaintiff from calling witnesses and presenting evidence in his defense.

8    As noted above, inmates have the right to present evidence and call witnesses during prison

9    disciplinary hearings.  *Wolff*, 418 U.S. at 566.  Yet, this is not an "unrestricted right" – the

10   requirement is limited to the discretion of the disciplinary officer, who must consider whether

11   doing so will be "unduly hazardous to institutional safety or correctional goals."  *Id*.  Prison

12   officials "must have the necessary discretion to keep the hearing within reasonable limits and to

13   refuse to call witnesses that may create a risk of reprisal or undermine authority... ."  *Id*.

14   However, if a prison official limits an inmate's right to defend himself, he or she must have a

15   legitimate penological reason.  *Koenig v. Vannelli*, 971 F.2d 422, 423 (9th Cir. 1992).  Prison

16   officials must explain their reasons for denying inmates these due process rights, either at the time

17   of the hearing or "later," in court.  *Id.* (citing *Ponte v. Real*, 471 U.S. 491, 497 (1985)).  The

18   burden of proving an adequate justification for denial of the request rests with prison officials.

19   *Ponte*, 471 U.S. at 499.  NDOC regulations also require that when a hearing officer denies an

20   inmate the right to call witnesses, the hearing officer must "document" his reasons (#355, Exhibit

21   O, D-MSJ 120).

22   Plaintiff claims that defendant Kennedy prohibited him from submitting documentary

23   evidence and calling two witnesses during his disciplinary hearing (#378).  Plaintiff told the pre-

24   hearing officer on January 11 that he wanted to call Officer Minegar and Assistant Warden

25   Coleman as witnesses at his disciplinary hearing.  *Id.* at D-MSJ 20.  It is clear that this did not

26   occur.  Further, although it is not entirely clear, there is some evidence demonstrating that

27   plaintiff asked but was not permitted to submit documents at the hearing (#378, Exhibit 10-D).

28   Unfortunately, the hearing record is completely devoid of information as to whether plaintiff

9

1  made these requests to defendant Kennedy on the day of the hearing.  Plaintiff claims that he did.

2  Defendant Kennedy has failed to present his version of events to this court, as is his burden.[8]  If

3  plaintiff did indeed make these requests on the day of the hearing, and there was a valid reason

4  for defendant Kennedy to have denied plaintiff's request, defendant Kennedy was *required* to

5  document – either at the hearing or "later" – why he denied plaintiff his rights.  *Ponte*, 471 U.S.

6  at 497 ("[t]o hold that the Due Process Clause confers a circumscribed right on the inmate to call

7  witnesses at a disciplinary hearing, and then conclude that no explanation need ever be vouched

8  for the denial of that right, either in the disciplinary proceeding itself or if that proceeding be later

9  challenged in court, would change an admittedly circumscribed right into a privilege conferred

10 in the unreviewable discretion of the disciplinary board."); *see also* NDOC Administrative

11 Regulation 707 at #355, Exhibit O, D-MSJ 120 ("Such denial will be documented.").  Because

12 there is an issue of fact as to whether plaintiff made the request, and if so, what defendant

13 Kennedy's justifications were for denying plaintiff's request, the court cannot grant summary

14 judgment.[9]

15

----

16  [8] Defense counsel contends that neither of plaintiff's witnesses are percipient witnesses to the
17  January 7 incident (#365, p. 12).  Defense counsel argues that "to the extent Deeds had earlier requested their
    participation as witnesses, their testimony would have had limited, if any, relevance to the disciplinary
18  proceedings, and Defendant Kennedy was permitted to exclude such witnesses." *Id*.  While it is true that
    defendant Kennedy may permissibly exclude irrelevant witnesses, the justification for such exclusion must
19  be documented at the hearing, or now, during the court case. *Ponte*, 471 U.S. at 497.  As defense counsel
    was not present at the hearing, suppositions regarding why defendant Kennedy may have excluded plaintiff's
20  witnesses is not enough to meet the *Ponte* requirement.

21  [9] The documentary evidence plaintiff wanted to submit consists of plaintiff's 2001 complaints
    regarding defendant Thorpe's behavior (#346, Exhibit S-1 – S-3).  Review of these complaints do not
22  indicate that plaintiff was concerned at that time with defendant Thorpe "stalking" him, "hunting" him, or
    requesting sexual favors, as he now alleges.  Instead, the written complaints, which were sent to Assistant
23  Warden Coleman, indicate to this court that plaintiff simply did not like or want to follow certain rules that
    defendant Thorpe was trying to enforce.  *See* #346, Exhibit S-1 (plaintiff complains of "guards like c/o
24  Thorpe who won't shut up, stay in their office, or mind their own business"); *see also id*., Exhibit S-2
    (complaining about correctional officers using the cell speaker to "torture" him, stating "c/o Thorpe in
25  particular, who uses any excuse to feel important"); *see also id*., Exhibit S-3 (complaining that "For 8 hours
    a day, c/o Thorpe requires us to make him feel pretty, powerful, or relevant, using his authority in every little
26  thing to make our lives revolve around him as he preens and prances.  He won't stay out of my cell, won't
    stay out of my window, won't mind his own business or shut up.  Constantly yells.  Won't stay in his office.
27  ... He fails entirely to understand he has to go away for anyone to like him.  I probably won't pursue this
    further.  He is his own punishment.  But it's getting real old.").  Assistant Warden Coleman's response to
28

1  Plaintiff also claims that defendant Kennedy falsified his statement at the disciplinary

2  hearing. The written report of the hearing reveals that plaintiff admitted to possessing

3  contraband, and also admitted that he pushed past defendant Thorpe's arm because he was

4  "offended" that Thorpe touched him (#355, Exhibit F, D-MSJ 21). Plaintiff now contends that

5  he never said that he was "offended" by defendant Thorpe and therefore disregarded defendant

6  Thorpe's orders, and that the tape of the hearing will prove this (#378, p. 16). It is unclear why

7  neither party has submitted the tape of this disciplinary hearing – it seems to the court that some

8  of these issues could be resolved fairly quickly. If there is a tape available, it should have been

9  submitted as evidence in order to reveal what occurred during the disciplinary hearing with regard

10  to the witnesses and the evidence. The truth or falsity of plaintiff's statement on the day of the

11  hearing can be resolved at that time as well.

12  Finally, plaintiff claims that defendant Kennedy should not have run the disciplinary

13  hearing because he had a conflict of interest. Due process requires a non-biased decision maker

14  at the prison disciplinary hearing. *Wolff*, 418 U.S. at 570-71. Plaintiff alleges that a conflict was

15  created because in the months prior to the January 7 incident with defendant Thorpe, he

16  complained to defendant Kennedy about defendant Thorpe's behavior. Plaintiff also claims that

17  defendant Kennedy was defendant Thorpe's superior, but submits no evidence of this. While

18  there is evidence that plaintiff complained to Assistant Warden Coleman about defendant

19  Thorpe's behavior a few months prior to the incident, plaintiff presents no evidence that

20  defendant Kennedy knew about or was in charge of resolving these complaints. The court finds

21  no proof of any conflict.

22  Based on the above conclusions, the court denies both parties' motions for summary

23  judgment as to plaintiff's Fourteenth Amendment claims against defendants Thorpe and Kennedy

24  _____

25  plaintiff states that part of a correctional officer's job is to be aware of what is going on in the unit and to

26  observe inmates, and that defendant Thorpe was doing what he was supposed to be doing. It is possible these complaints could be read to demonstrate that defendant Thorpe had a dislike for plaintiff. It is equally

27  possible they are entirely irrelevant as to whether plaintiff possessed the coffee and ignored defendant Thorpe's orders. Regardless, the court is constrained by the fact that defendant Kennedy failed to document

28  his justifications for denying plaintiff's request to submit evidence and present witnesses.

1   on the narrow issues of whether plaintiff was impermissibly prohibited from submitting evidence

2   and calling witnesses and whether plaintiff's statement was falsified.[10]

3                    **2. Eighth Amendment Claim Against Defendant Kennedy**

4           Plaintiff alleges in his complaint that there is a limit on the number of days an inmate may

5   be confined to disciplinary detention, and that in order to bypass these time limits, defendant

6   Kennedy sentenced him to disciplinary detention but called it "austere housing" (#250). Plaintiff

7   also claims that austere housing is "indistinguishable" from disciplinary detention "in all salient

8   respects" (#378, p. 19).[11]

9           An inmate may challenge the conditions of his confinement as a violation of his Eighth

10  Amendment right to be free from cruel and unusual punishment. To succeed on such a claim he

11  must meet both an objective and subjective standard. *Johnson v. Lewis*, 217 F.3d 726, 731 (9th

12  Cir. 2000). To meet the objective standard, an inmate must prove that the deprivation he suffered

13  was "objectively, sufficiently serious." *Morgan v. Morgenson*, 465 F.3d 1041, 1045 (9th Cir.

14  2006) (citations omitted). Prison officials must provide inmates with adequate shelter, food,

15  clothing, sanitation, medical care, and personal safety. *Johnson*, 217 F.3d at 731. The court must

16  evaluate the circumstances, nature and duration of the deprivation to determine whether it is

17  inhumane or so egregious that it could result in significant injury or the unnecessary and wanton

18  infliction of pain. *Clement v. Gomez*, 298 F.3d 898, 903 (9th Cir. 2002).

19  _____

20          [10] Plaintiff disputes defendant Thorpe's version of the January 7, 2002 incident, contending that he
     complied with defendant Thorpe's orders to drop the coffee and stop walking, and that defendant Thorpe
21   physically hurt him. Defendant Kennedy, not defendant Thorpe, took the actions during plaintiff's
     disciplinary hearing. However, whether or not plaintiff received due process concerning the issuance of the
22   allegedly false NOC is dependent on whether plaintiff received due process during his disciplinary hearing
     because the disciplinary hearing is where the factual basis for the guilty finding is resolved. Thus, the court
23   does not dismiss plaintiff's Fourteenth Amendment claim against defendant Thorpe.

24          [11] Plaintiff also argues that austere housing constitutes an "atypical and significant hardship in
     relation to the ordinary incidents of prison life" (#327). As noted above, plaintiff alleged only an Eighth
25   Amendment claim in his complaint; he did not allege that he had a liberty interest in remaining free from
     austere housing. Additionally, without actually conducting an analysis under *Sandin v. Conner*, 515 U.S.
26   472 (1995) – which would require the court to compare general population, austere housing, and disciplinary
     detention conditions – the court observes, as set out in further detail below, that from plaintiff's description
27   of his conditions during his time in austere housing, austere housing is not nearly as restrictive as disciplinary
     detention.
28

1    The subjective standard requires a showing that prison officials were "deliberately

2    indifferent" to the inmate's safety. *Johnson*, 217 F.3d at 731. Deliberate indifference requires

3    that prison officials were aware of facts that presented a substantial risk of harm to the inmate,

4    and recognized that the situation posed a substantial risk of harm. *Estate of Ford v. Ramirez-*

5    *Palmer*, 301 F.3d 1043, 1049-50 (9th Cir. 2002).

6    Plaintiff claims that during his sentence in austere housing, he was confined to his cell

7    nearly all the time, was prohibited from having a job and earning good-time credits, was denied

8    physical access to the law library, was denied cleaning supplies, was regularly "blasted" by the

9    loudspeaker in his cell, was denied his personal property and electrical appliances, was limited

10   to spending fifteen dollars per week in the canteen, that his cell lacked a window, and that guards

11   with shotguns patrolled the unit (#327, pp. 5-11; # 346).

12   Disciplinary segregation is defined as "a form of separation from the general population

13   in which an inmate's privileges may be restricted" (#355, Exhibit O, D-MSJ 109). Disciplinary

14   segregation inmates can be confined to austere housing or disciplinary detention. *Id*. Austere

15   housing is defined as "a medium custody form of separation from the general population

16   administered by the disciplinary committee as an option for disciplinary sanctions." *Id*., Exhibit

17   L, D-MSJ 56. Disciplinary detention is defined as "a form of separation from the general

18   population, in which an inmate is confined to a single-occupancy cell, without privileges, for a

19   period not exceeding 15 days in any 30 day period." *Id*., Exhibit O, D-MSJ 109.

20   Austere housing inmates are housed in two-person cells and may: 1) possess limited

21   personal property such as clothing, personal hygiene supplies, legal and religious materials, three

22   personal books, writing materials, photo albums, and address books; 2) spend fifteen dollars per

23   week in the canteen; 3) have visitors one day per week; 4) access the law library through inmate

24   law clerks; and 5) are prohibited from working or possessing electrical appliances, musical

25   instruments, jewelry, hobby crafts and games (#355, Exhibit L, D-MSJ 56-68). The regulation

26   requires that inmates receive yard and tier time, although it is unclear how much. *Id*. at D-MSJ

27   59 ("The hours of operation for yard and tier access will be posted in Unit 7B. Ingress from the

28   yard will be permitted on the half hour. During yard and tier time, the cell door may remain

13

1   unlocked to complete showers and cell sanitation.").[12]   Correctional officers are permitted to

2   terminate yard and/or tier time for the safety and security of the institution.  *Id.* at D-MSJ 67.

3         In comparison, inmates in disciplinary detention are housed in single cells and may: 1)

4   possess only clothing, personal hygiene supplies, and legal and religious materials; 2) receive only

5   legal and first-class mail, but not packages, publications or newspapers; 3) receive only legal

6   visits; 4) receive no personal or non-emergency phone calls; 5) request only five books at time

7   from the law library; 6) are permitted only three showers per week; 7) are permitted exercise one

8   hour per day, five days per week; and 8) may not use recreation equipment, watch television,

9   make canteen purchases, or work a job (#355, Exhibit Q).

10        As a general matter, there is no indication that the conditions in austere housing, as set out

11   in the NDOC regulations, violate the Eighth Amendment.  Further, it is clear that disciplinary

12   detention is much more restrictive than austere housing, and that the two are not

13   "indistinguishable" as plaintiff claims.

14        Specifically, as to plaintiff's forty-five day stay, only plaintiff's claim that he was confined

15   to his cell the entire time without yard or tier time is "objectively, sufficiently serious." *Johnson*,

16   217 F.3d at 731; *see also Keenan v. Hall*, 83 F.3d 1083, 1089-90 (9th Cir. 1996) (deprivation of

17   outdoor exercise violates the Eighth Amendment rights of inmates confined to continuous and

18   long-term segregation).  Yet, aside from his affidavit, plaintiff has presented absolutely no

19   evidence to support the allegation that he was confined to his cell the entire time he was in austere

20   housing.  Plaintiff did not present inmate affidavits, nor did he present grievances in which he

21   complained of being confined to his cell.  Plaintiff cannot create an issue of fact based merely on

22   his unsupported allegation.  *U.S. v. 1 Parcel of Real Property, Lot 4, Block 5 of Eaton Acres*, 904

23   F.2d 487, 492, n. 3 (9th Cir. 1990) ("Conclusory allegations unsupported by factual data will not

24   create a triable issue of fact") (citations and quotations omitted).

25        Plaintiff's other claims regarding jobs, good-time credits, lack of physical access to the

26

27         [12] Defendants submit the housing rules for Unit 7B, which contain a Unit 7 yard and tier schedule
    (#355, Exhibit M, D-MSJ 80).  However, this schedule states that it is not applicable to austere housing
28   inmates; therefore, it is not helpful.  *Id.* at D-MSJ 70 ("Unit 7B – not to include austere housing").

1   law library, a cell window, armed guard patrols, personal property, appliances, and spending

2   limits do not rise to the level of objectively serious claims.  The court notes that plaintiff spends

3   many pages making comparisons between the conditions in austere housing and general

4   population, implying a number of times that inmates confined to austere housing lack the same

5   privileges as inmates in general population (#327).  This is true – inmates in austere housing *do*

6   receive less privileges because they are serving a sanction for failing to follow prison rules.  The

7   court reminds plaintiff that he is in prison and that there is no constitutional requirement that

8   prison be pleasant.  *See Rhodes v. Chapman*, 452 U.S. 337, 349 (1981) ("The constitution does

9   not mandate comfortable prisons... .").  "To the extent that such conditions are restrictive and

10  even harsh, they are part of the penalty that criminal offenders pay for their offenses against

11  society."  *Id*. at 347.  Clearly, prison officials must have a method of punishing inmates who

12  violate prison rules – indeed, order in a prison is essential.  Thus, having different levels of

13  confinement with different levels of restrictions is a means by which officials can induce inmates

14  to obey the prison rules.  It is perfectly acceptable for inmates, especially those in disciplinary

15  segregation, to be under stricter conditions of confinement, so long as they are provided with "the

16  minimal civilized measure of life's necessities."  *Rhodes*, 452 U.S. at 347.

17        Finally, the court addresses a last concern.  In an attempt to prove that the officers at

18  NNCC are "corrupt," "lazy," and "retaliatory," plaintiff sets out the many times he has been

19  sentenced to austere housing over the years (#327, pp. 9-10).  For the record, this court it is

20  extremely familiar with plaintiff as he is a frequent litigant.  In the course of reviewing filings in

21  plaintiff's many court cases, this court has seen evidence that spans numerous years and details

22  plaintiff's many run-ins with different correctional officers, NDOC medical personnel, and

23  outside medical personnel.  The court is aware that many of the NDOC and outside medical

24  personnel are afraid of plaintiff and refuse to treat him, although, the court understands that the

25  plaintiff disputes this.  Plaintiff continually asserts that the disciplinary incidents with correctional

26  officers are the result of retaliation or rogue guards.  It is difficult for the court to believe that

27  plaintiff is the innocent party in each and every one of these incidents, as he continually asserts.

28  Plaintiff must understand that he loses credibility with this court in making these continual

15

allegations.  In this particular case, the court has reviewed plaintiff's disciplinary segregation evidence and concludes that the evidence demonstrates only that the plaintiff does not like prison rules and does not like following them.

### III. CONCLUSION

Based on the foregoing and for good cause appearing, the court concludes that:

1. Plaintiff has alleged a Fourteenth Amendment due process claim against defendant Thorpe with regard to the January 7, 2002 incident;

2. Plaintiff has alleged a Fourteenth Amendment due process claim against defendant Kennedy with regard to the January 15, 2002 hearing and an Eighth Amendment claim as to the conditions of confinement in austere housing;

3. There exist genuine issues of material fact as to whether defendant Kennedy improperly denied plaintiff his right to present evidence and call witnesses during plaintiff's January 15, 2002 disciplinary hearing; these issues of fact preclude summary judgment as to whether the defendants violated plaintiff's Fourteenth Amendment due process rights;

4. There is no evidence that austere housing violates the Eighth Amendment as a general matter;

5. Plaintiff's claim that he was denied outdoor exercise during his time confined to austere housing is unsupported; and

6. The remainder of plaintiff's allegations concerning the conditions during his time confined to austere housing do not rise to the level of "serious" deprivations.

As such, the court recommends that:

1. Defendants' motion for summary judgment re: disciplinary claims as to defendants Kennedy and Thorpe (#355) be **GRANTED** as to plaintiff's Eighth Amendment claim, but **DENIED** as to plaintiff's Fourteenth Amendment claims; and

2. Plaintiff's motions for summary judgment against defendant Kennedy (#327) and defendant Thorpe (#346) be **DENIED**.

The parties are advised:

1. Pursuant to 28 U.S.C. § 636(b)(1)(c) and Rule IB 3-2 of the Local Rules of Practice, the parties may file specific written objections to this report and recommendation within ten days of receipt.  These objections should be entitled "Objections to Magistrate Judge's Report and Recommendation" and should be accompanied by points and authorities for consideration by the District Court.

2. This report and recommendation is not an appealable order and any notice of appeal

1  pursuant to Fed. R. App. P. 4(a)(1) should not be filed until entry of the District Court's

2  judgment.

3  ### IV.  RECOMMENDATION

4  **IT IS THEREFORE RECOMMENDED** that:

5      1.    Defendants' motion for summary judgment re: disciplinary claims as to defendants
        Kennedy and Thorpe (#355) be **GRANTED** as to plaintiff's Eighth Amendment

6          claim, but **DENIED** as to plaintiff's Fourteenth Amendment claims; and

7      2.    Plaintiff's motions for summary judgment against defendant Kennedy (#327) and
        defendant Thorpe (#346) be **DENIED**.

8

9  **DATED:** May 16, 2008.

10

11  _____
    **UNITED STATES MAGISTRATE JUDGE**

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28